Mel Marin                       October 20, 2020
USPS Gen. Delivery
Vermillian, SD 57069
Plaintiff, *Pro Se*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| MEL MARIN, | CIV 19-5057-JLV |
| Plaintiff, | PLAINTIFFS' PROPOSED ORDER |
| v. | RE: MOTION FOR JUDGMENT ON THE PLEADINGS |
| WELLS FARGO, N/A, *etc.*, | AND OPPOSING DISMISSAL |
| Defendants. | |

Plaintiffs filed an action alleging wrongful foreclosure of Ms. Bauman's residence on about March 4, 2019 and for torts including conversion, fraud, and personal injuries. Wells Fargo moved to dismiss. Plaintiffs oppose and have filed a motion for partial judgment on the pleadings. Their motion is GRANTED.

**Real Property Allegations And Evidence Submitted to This Court**

Exhibits of the bank include a HELOC mortgage, and two deeds of trust, and an order of a former bankruptcy judge dated November 8, 2018 finding Ms. Bauman's bankruptcy filed in 2018 in bad faith and lifting the stay for that action.

1

Although all 3 of those property documents refer to "the Note" for explanation of terms in those papers and point to the Note to provide necessary information, no promissory note was submitted by Wells Fargo to this court. That means no signature by the borrower verifying receipt of loan money, no total loan amounts, no payment provisions, and no interest. Yet these are required to enforce it.

Mr. Marin's sister and co-plaintiff Bauman has also opposed dismissal and joined with her brother's motion and testified under penalty of perjury by declaration that brother's representations are true that although she and original lender Wachovia planned to complete the total loan agreements in 2007 or 2008 by drafting a promissory note, none was actually created by the lender and Ms. Bauman never signed a statement saying she received any loan money.

This is supported by the exhibit offered by Ms. Bauman that she explains comes from an investigative office of the bank following her demand for discovery against Wells in a prior state court law suit, verifying that they have no record of a loan check being cut for this property. So, in response to her prior discovery requests Wells did not provide the Note – only a record suggesting there never was one.

She further testified that the original lender Wachovia processed her loan application as a construction loan and for that type of loan repayments could not be made from loan proceeds so she was asked to start making monthly payments

2

on the new loan for at least 6 months to prove to their underwriter she could make the payments.

She alleged in the first amended complaint, however, that after 6 months Wachovia started a merger with Wells Fargo and bank staff did not make themselves available but she kept making monthly payments anyway, expecting one of the banks would create a note and call her to meet for a closing at which she would receive a loan check and sign a promissory note. But apparently they never did fund the loans and merely kept all of her payments until May 2011 when Wells Fargo refused to accept anymore payments and then declared her in default for failing to continue payments, forcing sister to file for bankruptcies to avoid foreclosure and loss of her only residence. In re Blenheim, 803 F.3d 477 (9th Cir. 2015)(filing a Chapter 13 action to stop a foreclosure is proper).

Sister also verified that although she sought leave from the bankruptcy trustee to sue these defendants during her bankruptcies, the trustee failed to act on it, and the bankruptcy judge would not allow her to prosecute these claims in the bankruptcy court itself as an adversary action. She also testified that Judge Taylor in San Diego dismissed her law suit against other defendants because she had an open bankruptcy and accordingly, she lost the rights to her own causes of action during that bankruptcy. Brother submitted a copy of that order of Judge Taylor to this court.

She also verified the truth of the complaint allegations.

In their first responsive pleading Wells Fargo moved to dismiss on the basis that the filing in this court was beyond the 6 year statute of limitations for fraud and other torts, and that no tolling of that statute was available to allow a challenge to their foreclosure because under California law the stay does not stop the running of statutes of limitation for a debtor's law suits against creditors, and only stops creditors in their tracks from going after the debtor.

Bank counsel cited two California cases to support that law but the plaintiffs cited the same two cases in their amended complaint for the opposite ruling, that debtors cannot prosecute their own causes of action after they file bankruptcy in the 9th Circuit because the bankruptcy stopped them, *e.g.*, *Kertesz v. Ostrovsky*, 115 Cal.App.4th 369, 378 (2004) (trial court erred in granting demurrer and failing to toll the time the plaintiff's prior action was in bankruptcy court, and should have allowed the new filing after a 10 year delay because of the bankruptcy).

Both sides can't both be right. Someone violated Rule 11 by not reading the cases and representing falsely to the court the holdings of those cases. Plaintiffs were right. The bank violated Rule 11. So that argument by the bank was frivolous and in bad faith.

It will save time and trouble for everyone, rather than trying to weigh cases and contentions as to the property dispute based on bank waivers of arguments, or

sister's powers or lack thereof to prosecute her claims during bankruptcies in order to find which limitations period applies and what affect it has, to just start at the beginning and characterize the loans first.

This is because if there was no contract, then there was no statute of limitations so all the arguments about statutes of limitations and the tolling rules are unnecessary, as far as the property goes.

A statute of limitations must run against *something*. It cannot just start running out of thin air because a bank says it wants to take your house. It must have your house first, or take it, or show a completed contract for your house.

This approach may unravel years of tightly compacted threads of arguments like a golf-ball otherwise impossible to unwind.

It does not mean Ms. Bauman should not have filed bankruptcies, because taking the plaintiff's allegations as true for a demurrer, she was faced with real threats of foreclosure she did not understand, and fear of eviction and death. And even judges were fooled by the bank's demands and apparently may not have read the documents the bank relied upon. If they had read them, they would have come to the same conclusion as this court today, as to the residence.

As for the other causes of action, summary judgment is not available because it would be premature without discovery, so they are only reviewed for failures to state claims under the best interpretations of the plaintiffs' facts.

5

## No Loan Contract Exists

First, there was no contract in 2007 for anything. The bank submitted the documents mentioned above but no promissory note, and all three documents point to the missing promissory note to explain rights and duties contained in the documents.

Mortgages, also called deeds of trust, are not promissory notes and those mortgages that point to a promissory note somewhere else to explain vital details like total loan amount, interest, and penalty fees, when not produced by the party claiming ownership carries the presumption that the parties wanted a note but never got around to creating one.

For instance, the OPEN END DEED OF TRUST the bank filed at Page ID # 233(?), Recorder's page 10994, states it is SECURITY for the HELOC, which is also called "Security Instrument", but conditions the rights in that document **to the promissory note:**

- At Page ID# 234, ¶ 3 ("covenants and agreements under this Security Agreement and the Note"),

- Page ID# 235, ¶ 1 (payments must be received where the Note says),

- Page ID# 235, ¶2 (date payments are due when the Note says),

- Page ID# 236, ¶ 3 (Note dictates the order payments are to be credited and allows borrower to change crediting of payments),

6

- Page ID# 237, ¶ 3 (borrower may assign payments as the Note allows),

- Page ID# 238 ¶ 3 (borrower and insurance make payments together according to the Note),

- Page ID#239, ¶ 5 (principal, interest and finance charges are paid according to the Note), *etc.*

And it is the same with the DEED OF TRUST at PageID # 253:

- Page ID # 253, ¶ 1 calls itself the "Security Instrument" for a regular loan that is not a HELOC and points to the note in bold words: THIS IS A FIRST DEED OF TRUST WHICH SECURES A **NOTE** WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL AND INTEREST (INCLUDING FUTURE ADVANCES) . . ..

- Page ID # 254, at (D) states it relies completely on the Note.

But the Note is not there.

Here, moreover, it is more than a presumption that the note was never created because the bank moved under Rule 12(b) to dismiss on the basis of those 3 documents alone. Those 3 documents are not enough to find a note ever existed. And a party moving to dismiss under Rule 12(b) waives all other bases for dismissal that they did not argue initially. So it is now a fact that no note was ever made.

**Unclean Hands**

Wells cannot come in a reply later and say "Here is the missing note!" because that would constitute a new argument for a Rule 12(b) motion to dismiss based on 4 documents, not 3. This they may not do in reply. <u>Francis S. v. Stone</u>, 995 F.Supp. 368, 379 [11] (S.D.N.Y. 1998), *affirmed* 221 F.3d 100 (courts refuse to consider arguments raised for the first time in reply).

In other words, the bank argued the documents they presented were enough to establish ownership, and that failed. So they cannot come now and present some new draft and argue the new draft plus the old ones establish that a contract existed since they did not make that argument initially.

On occasion courts have sought to avoid this harsh result of Rule 12(b) with extensions of time to provide better evidence or to deny the motion without prejudice so they can raise it again in another form with the right documents under inherent court powers of equity.

However, to receive equity the erring party must do equity. Wells Fargo did not do equity. On the contrary, they come with unclean hands. They have many years of expertise in making loan contracts so they have superior knowledge, and they have 200 lawyers to help them, and they know what is required and they should have seen in five minutes that all their papers do not form a valid contract without the Note to which they point.

So they may have been bluffing for years, putting these plaintiffs through "the ringer" without valid bases, and then they come to this court and may have violated Rule 11 by presenting a defense that is not justified by facts or law, and boldly misrepresenting the holdings of pivotal cases to fool this court. Therefore, the harshness of the Rule 12(b) imposed waiver is justified here.

Nor would an extension of time help them anyway. This court takes judicial notice of the proceedings in the prior bankruptcy and state court actions in California and finds Wells did receive demands for document production and apparently could not find the Note for 10 years. Giving them yet another month to look some more just wastes everyone's time and continues to paralyze sister's use of her property, and is a continuing stress that may hurt the plaintiffs.

That made the deeds of trust that Wells submitted mere "contracts to contract" until the note they refer to was created. But since the bank has not submitted the promissory note, the court must assume it does not exist and never has. Therefore, the loans were void, *ab initio*. Because the promissory note is a minimum requirement to create the real estate loan. So those 3 papers transferred no right or power to the lender to demand payment, to declare default for a loan that did not yet exist, nor to foreclose for failure to make payments that were not necessary for something that did not exist. Garrett v. BankWest, Inc., 459 N.W.2d 833 (SD 1993) (there was no contract, where "some of the terms" were never put

9

into writing and it was intended to do so later); Mays v. Trump Indiana, Inc., 255 F. 3d 351, 357 (7th Cir. 2001)("a mere agreement to agree does not a binding contract make. . . .. the so-called 'contract to contract' is not a contract at all.").

Thus, it is established that no promissory note ever existed, and the bank cannot recover from that failure to present later all the parts of the contract that they seek to enforce.

So there is no genuine issue of fact for a jury to resolve on property ownership. The papers the bank submitted could not give the lender power to do anything, so there was nothing to assign, so the sale was a sham on March 4, 2019, a mere "dog and pony show" with no value, and Wells is clearly not the owner.

In other words, plaintiffs alleged there was no valid contract and Wells Fargo presented documents that also prove there was no valid contract. Bank counsel can say whatever they will, but statements of counsel are not facts, and not evidence. Exeter Bancorporation v. Kemper Securities Group., Inc., 58 F.3d 1306, 1312 n. 5 (8th Cir. 1995)(statements of counsel are not evidence).

Therefore, the court may find and does find that there was no loan created. Nor could there be a claim for breach of contract since there was no contract.

So, as to the issue of her property, statutes of limitation were not missed by sister because there were no statutes of limitation to run from the date a contract was formed since here no contract was formed.

10

And Wells could not be considered an adverse possessor from which statutes of limitation could run because that requires actual possession of the property for 20 years with a good faith claim of right. Here, however, the bank is guilty of bad faith because they should have known all the elements to make a loan contract were not present, and they never actually possessed the property but threatened to do so for ten years. And since they have not actually evicted the plaintiffs they could not be said to possess it now. Therefore, they have been exercising a "bluff" for a decade that fooled not only sister but also several judges.

It is time to end that phoney pony.

The MOTION TO DISMISS IS DENIED, and the plaintiffs' motions for JUDGMENT ON THE PLEADINGS and TO STRIKE THE PROPERTY DEFENSES of Wells Fargo, are GRANTED, and the bank is enjoined from continuing to hold itself out as owner of the subject property and is directed to DEED IT BACK AT ONCE TO SISTER IN FEE SIMPLE without reservation and without any claims for liens, and to return money she paid for mortgage payments as partial restitution and without prejudice to her ability to argue for a more perfect restitution and for other damages later.

It would be grossly unfair for the bank to keep the money as hostage that belongs to her that she paid into a scam so she cannot hire competent counsel to prove that scam and to sue for full damages, including potential punitive damages.

11

## Non-Property Claims

Non-property claims, however, are a different matter.

**As for the fraud cause of action**, a party normally is required to provide details about who, what and when, to the date if possible. The plaintiffs did this. The bank's opposition argument outside of limitations was that Wells Fargo was not a party to the fraud. However, the plaintiffs correctly cited merger laws at FAC, ¶ 31 that saddled the acquiring bank with the liabilities of the tortfeasor entity. And plaintiffs provided excerpts of the actual merger documents.

Plaintiffs also alleged Wells knew that World/Wachovia were pursuing a bluff when no loan was formed and that Wells joined-in with this bluff and failed to disclose the fact that there was no valid loan for 10 years after the merger when they had a duty to do so, to sister and to 6 different judges. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001)("When a party has a duty to disclose information and fails to do so, the concealment of that information may constitute fraud".)

That is the fraud omission rule. Wells committed that fraud, not Wachovia. Plaintiffs alleged Wells did it at ¶¶ 33-35, but Wells argued plaintiffs failed to allege Wells itself committed fraud. Obviously bank counsel did not read the complaint. So that objection fails. The plaintiffs state claims.

Both parties also agree that six years is the statute of limitations. But the plaintiffs again are correct that sister's time within which to sue was equitably

tolled by sister trying to prosecute these claims during the bankruptcies, but the bankruptcy trustee and two judges refused to allow her to prosecute her actions outside or inside of the bankruptcy until November 2018 the bankruptcy judge lifted the stay. Eistrat v. Cekada, 50 Cal.2d 289, 292 (1958)("the running of the statute is suspended during any period in which the plaintiff is legally restrained from taking action to protect his interests"); Earl v. Fabian, 5656 F.3d 717, 722 (8th Cir. 2009); Dakota Truck Underwriters v. SD Subsequent Injury Fund, 2004 SD 120, at ¶¶ 28, 30.

That argument prevails because the law on equitable tolling the plaintiffs submitted is correct, and because Wells failed completely to oppose the facts or law plaintiffs presented on it at FAC ¶¶ 9, 167, 184, and 208, and that waived opposition by the bank to that argument.

Because statutes of limitation are personal defenses, the parties may waive that basis of tolling and the court cannot rescue them nor relieve their waiver. That is what happened here. Wells spent all their wind arguing against tolling based on the automatic stay, and violated Rule 11 to mischaracterize two key cases in support of that argument. But the steam that blows a whistle will never turn a wheel. So Wells had no more steam to oppose plaintiff's equitable tolling argument.

Moreover, sister's automatic stay argument was also correct, and the cases

13

plaintiffs cited do prove in the 9th Circuit a debtor cannot prosecute her own causes of action once she files bankruptcy. So the bank burned its capital with this court by misrepresenting cases at the first pleading and gained nothing. Six years did not run after subtracting sister's time in bankruptcy. The fraud claims are good.

**As for the UCL cause of action**, the bank did not argue statutes of limitation against brother so they waived it. The tolling of sister's claims for fraud also applied for the rest of the torts. And the objection was otherwise premature because the court must wait to see if an action at law will produce a "perfect justice". If not, equity is available. Ziebarth v. Kalenze, 238 N.W.2d 261 (N.D. 1968)(existence of a remedy at law does not preclude equitable relief if the equitable remedy is better adapted to render a more perfect and complete justice).

**As for rescission claims**, they only apply if the court finds a contract was made. So those objections are also premature and await the court finding no contract was made.

**As for conversion claims**, the bank says they oppose them but the content of their submission constitutes a stipulation that works against their argument and suggests the plaintiffs state claims. Democracy Rising PA v. Celluci, 603 F.Supp. 2d 780, 788 n. 10 (M.D. Pa. 209)[motion is what it does and not always what it says]. It does state claims because it says conversion only applies against rights and not real property and that is what plaintiffs allege.

14

**As for infliction of emotional distress to brother**, the injury was in California so that law applies. And brother cited good law in support. Wells did not contest this law, so the bank waived that opposition. Wells did argue that the facts plaintiffs presented were not outrageous. But that is premature because it can only be made to a jury. This court cannot rule on that fact challenge.

**As for credit defamation claims**, the bank begs the issue, which means they require this court to accept their version of facts to consider their argument and not the plaintiffs' version. But that is backward. Under Rule 12(b) the court must assume the plaintiffs' fact are true.

The bank's *best* argument essentially is this: since Wells is a lender as defined by the Fair Credit Reporting Act at 15 U.S.C. § 1681s-2, they are protected from prosecution for reporting adverse information *in good faith* about their loan to credit reporting agencies. It is true that lenders are "furnishers" of credit information as defined by H.R.Rep. No. 108-263, at 24 (2003), and are protected by the Act that prevents suits for certain negligent information except as preemption steps may permit or there *might* be another provision requiring a special proceeding that prevents a common law credit defamation claim, although this court does not now rule that is necessarily true. Gorman v. Wolpoff & Abramson, LLP, 584 F. 3d 1147, 1154 n. 7 (9th Cir. 2009)

But Wells Fargo was not a lender here because there was no loan and they

15

knew it or should have known it with their superior knowledge and experience at processing hundreds of thousands of loan applications for decades. They were a mere poser, a pretender, a phoney, a charlatan, a swindler, a mountebank, "someone practicing quackery or some similar confidence trick or deception in order to obtain money, fame or other advantages via some form of pretense or deception".

And here they actually did obtain money and advantage from sister by perpetuating rather than stopping what appeared to be the scam of Wachovia.

The definitions of furnishers under that act do not include phony ponies.

Therefore, they are not protected by preemption. Since that is the only bank argument against this cause of action, the court has no authority to suggest any other arguments and Wells waived other arguments. That objection is overruled.

**As for emotional distress and personal injury claims**, the bank argued at POINTS p. 26 that a bank owes no special relationship to its borrower and, therefore, Mehta governed here which dismissed because negligent emotional distress will not lie without a special relationship.

But law cited by plaintiffs more recent than the cases cited by Wells finds lenders *do* have a special relationship that allows a negligence claim when they offer a loan modification and then fail to process it properly. So this objection fails too, and it is the only one Wells makes.

16

**As for the remaining federal lending law claims**, Wells in each again begs the questions of ownership and legitimacy of the loans. They want the court to agree that the loan contract existed so consummation occurred and statutes of limitations ran since 2007 or 2011 against all federal statutes and that loan originators or owners like Wells are not caught as defendants because only loan servicers can be sued.

However, since there was no signature by sister to admit receiving any money, and no loan completion, here was no consummation so no statutes of limitation ran.

Additionally, Wells could not fairly be called the originator or owner of the loan because there was no loan. But Wells did collect payments from sister regularly and that made Wells a "servicer" under RESPA:

> RESPA further defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan.

RG Financial Corp. v. Vergara-Nunez, 446 F. 3d 178, 186 (1st Cir. 2006).

This also invites the issue of whether the federal lending statutes apply where no loan is actually consummated. Although Wells did not raise this issue, it may affect subject matter jurisdiction of this court so the court must determine if it has jurisdiction over these claims even if the parties do not.

Since the TILA states that it covers "offers to lend" as well as loans, a valid

loan is *not* a prerequisite to assert claims for violations of these federal laws:

> 6500 - Consumer Financial Protection Bureau
> PART 1026—TRUTH IN LENDING (REGULATION Z)
> Subpart A—General
> ( c) Coverage. (1) In general, this part applies to each individual or business that offers or extends credit. . ..

Therefore, the plaintiffs state claims as to the federal regulations because Wells failed to make any other challenge to the claims other than statutes of limitation which did not run because no loan was consummated.

Additionally, Wells argued no actual damages were alleged. But that misstated the complaint because they were stated at FAC ¶221. Again, bank counsel did not read the complaint so its opposition was not warranted by facts or law as required by Rule 11.

For these reasons the motion to dismiss IS DENIED IN ALL RESPECTS.

DATED: November ___, 2020         _____
                                  United States District Judge